James **WREN**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 8222.

United States Court of Appeals
Tenth Circuit.

Nov. 3, 1965.

**618**

Carl L. Harthun, Denver, Colo., for appellant.

James R. Ward, Asst. U. S. Atty. (Newell A. George, U. S. Atty., on the brief), for appellee.

Before PHILLIPS, BREITENSTEIN and HILL, Circuit Judges.

HILL, Circuit Judge.

Appellant, by direct appeal, attacks his conviction of the offense of transporting a firearm in interstate commerce after having been previously convicted of a felony, under 15 U.S.C. § 902(e). After indictment and prior to trial, appellant filed a motion, under Rule 41(e), F.R. Crim.P., to suppress evidence and alleged the firearm he was accused of transporting was taken from him after an illegal search of his automobile. The trial judge held a hearing upon the motion, denied the same and sustained the search and seizure on two grounds. Because of our disposition of the case, we need only concern ourselves with the trial court's finding that Wren consented to the search.

It is fundamental in our judicial process, as guaranteed by the Fourth Amendment, that we are secure in our persons, houses, papers and effects against unreasonable searches and seizures. This constitutional right, like all others, may be waived by voluntary consent.[1] In order to constitute a voluntary consent it must clearly appear that the search was voluntarily permitted or expressly invited and agreed to by the person whose right is involved. In addition, such person must be cognizant of his rights in the premises, the consent must not be contaminated by any duress or coercion and the government has the burden of proof.[2] The question of whether consent has been given is a question of fact for the trial court to determine in accordance with the foregoing accepted principles of law and subject to

1. Thomas v. United States, 10 Cir., 154 F. 2d 365.

2. McDonald v. United States, 10 Cir., 307 F.2d 272.

appellate review within the "clearly erroneous" rule.[3]

The undisputed facts show that Wren and a companion named Kilgore registered at a Kansas City, Missouri, hotel on January 13, 1965. During the evening of that day they drove to Kansas City, Kansas, and after dark parked their car alongside the curb at 7th and Nebraska Streets, with a Robert Hall Store on one side and a Safeway Store on the other. Shortly thereafter the police received a call that two men were in a parked car at the above location and were molesting women who were walking by the parked car. Two police cars were dispatched to investigate. When the first police car arrived, Wren and his companion were directed to get out of the parked car and were questioned briefly by the officers and one of the officers looked inside the car without searching it. In a short time the second police car arrived and the officers from that car continued with the questioning of the two men. In answer to the officers' questions, the two men gave conflicting and unsatisfactory answers concerning the reasons for their being in Kansas City and at the particular location. Wren informed the officers that he was unemployed and had been for some time. Officer Hall directed one of the other officers to take Kilgore down to headquarters and Officer Pruett told Wren that he would like to search the vehicle. Wren then opened the trunk with his key to permit a search of that part of the car by Officer Pruett who also searched the inside of the car and found the questioned firearm underneath one of the seats.

We must first observe that the circumstances of this consent and search do not present a "dramatic excitement of drawn guns" as in Weed v. United States, 10 Cir., 340 F.2d 827, nor a consent given after arrest so as to compel this court to view the situation with caution and misgivings. Wion v. United States, 10 Cir., 325 F.2d 420, cert. denied, 377 U.S. 946, 84 S.Ct. 1354, 12 L.Ed.2d 309. Also, unlike Villano v. United States, supra, the incident did not begin with "a violent interruption of appellant's privacy at his home at an unnatural hour and without semblance of lawful authority, * * *."

The evidence is conflicting on the issue of consent. Wren testified that he did not give his consent to a search of his car, and that he opened the trunk of the car after the officers indicated they were going to search the car only because he was afraid they would break the key off in the lock. Officer Pruett, who made the search, testified that after one of the officers was told to take Kilgore down to headquarters, he asked Wren if he could look into the car trunk and Wren replied, "Sure, go ahead and look anywhere you want to"; that Wren then voluntarily took out his trunk key and opened the trunk; that after the search of the trunk, Wren further stated, "Go search anywhere you want to"; and that he then searched the inside of the car and found the questioned firearm loaded with four bullets under the seat. Officer Hall corroborated Officer Pruett's testimony on this point.

The able trial judge chose to believe the testimony of the police officers and found as a fact, "that the Defendant Wren himself consented to the search." We agree with the trial judge but must examine the record to determine if the consent was given understandingly, intelligently and without coercion or duress.

In this regard, we look first to the testimony of Wren, who testified that he had not been arrested at the time of the search. Appellant, in his brief, strongly urges that there had been no arrest prior to the search of the car and specifically points out that he had not been handcuffed at the time of the search. Although the trial court found that there had been an arrest prior to the search, we do not believe that even the testimony of the police officers support such a finding. We accept appellant's contention in this regard. The evidence shows that Wren was merely being ques-

---

3. Villano v. United States, 10 Cir., 310 F.2d 680.

tioned along side of his parked vehicle on a public street and that the police, after a telephone complaint, were acting within their lawful authority. The circumstances of the investigation by the police presents a calm, routine performance of duty by the officers. There is no evidence of any threats on the part of the officers or the use of any other means from which duress or coercion could be inferred. We find nothing in the evidence that could be said to have compelled Wren to open his car trunk. We must conclude that it was Wren's own voluntary act. Also, we must accept the trial court's finding, based on the testimony of the officers as to what Wren said at the time the officers indicated a desire to search the car. Such finding is amply supported by the evidence. The finding attributes words to Wren that amount not only to consent but actually to an invitation to search the car. There is no contention made nor is there any evidence showing that the consent was not intelligently and understandingly given. We believe from all the evidence and the surrounding circumstances that the consent to search was intelligently and understandingly given.

Appellant also argues that he was denied due process of law and a fair trial because (1) his trial counsel did not cross-examine one of the government witnesses, and (2) four shells were admitted into evidence without proper identification.

The record does show that appellant's trial counsel did not cross-examine government's witness Thomas after the direct examination. This witness was an investigator for the United States Treasury Department. In summary, he testified that he first advised Wren expressly about his right to remain silent, that any statements he made could be used against him and of his right to have an attorney; that Wren admitted ownership of the firearm in question and stated he did not get it in either the State of Kansas or Missouri; and refused to state where he got the gun, except that it came from Spain. The record

shows that the trial counsel during the course of the brief examination of Thomas strenuously objected to the testimony and over seven pages of the record is consumed by colloquy between the trial judge and counsel on this point, during which the trial counsel did examine the witness about the statement. There was no need for any further cross-examination.

Granting for the sake of argument that the four shells were not technically properly identified before being admittedly into evidence, we do not believe their admission into evidence was prejudicial to the accused. The admission of the shells was only cumulative because the police officers had previously testified that the revolver was loaded with four shells when found in Wren's car. Also, the shells were not taken by the jurors to the jury room and no particular emphasis was put on this exhibit.

Affirmed.