**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Johnny RAMIREZ,**
**Defendant-Appellant.**

**No. 75–1002.**

United States Court of Appeals,
Tenth Circuit.

Argued Sept. 3, 1975.

Decided Oct. 21, 1975.

284

W. R. Hughes, Jr., Asst. U. S. Atty., Albuquerque, N. M. (Victor R. Ortega, U. S. Atty., and Don J. Svet, Asst. U. S. Atty., Albuquerque, N. M., on the brief), for plaintiff-appellee.

William W. Deaton, Federal Public Defender, Albuquerque, N. M., for defendant-appellant.

Before HILL, BARRETT and DOYLE, Circuit Judges.

BARRETT, Circuit Judge.

Johnny Ramirez (Ramirez) appeals a jury verdict of guilty to charges of possession with intent to distribute and dis-

tribution of heroin in violation of 21 U.S. C.A. § 841(a)(1).[1]

Ramirez was indicted on February 1, 1974 for drug charges which occurred on October 26, 1973. Although efforts were thereafter made by the United States Marshal's Office, the Drug Abuse Law Enforcement Office, and the Drug Enforcement Administration, to determine Ramirez's whereabouts, it remained unknown until October 22, 1974. At that time the Marshal's Office was apprised that Ramirez was an inmate at the New Mexico State Penitentiary. A detainer was immediately filed against Ramirez. The federal authorities were unaware that Ramirez had been sentenced for state drug offenses on February 11, 1974, and had been incarcerated at the New Mexico State Penitentiary since February 14, 1974.

After the issuance of a writ of habeas corpus ad prosequendum, Ramirez appeared before a federal magistrate November 7, 1974. He then entered a plea of not guilty. On November 19, 1974, Ramirez filed a motion to dismiss. A hearing was held on this motion November 26, 1974. The motion was denied.

Ramirez was convicted on December 2, 1974. This appeal followed. The sole issue presented for review is whether the delay in bringing Ramirez to trial violated his Sixth Amendment right to a speedy trial, thus mandating the dismissal of the indictment. We hold that the delay was not violative of Ramirez's Sixth Amendment right to a speedy trial.

Although there was a three month delay between the offense and the indictment, Ramirez does not challenge this delay. Rather, he challenges only the ten month delay between the time the indictment was returned and the time he was tried, as violative of his Sixth Amendment right to a speedy trial.

---

1. Section 841(a)(1) provides:

  (a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

  (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance;

. . . .

■ Ramirez cites *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), for the proposition that prejudicial delay to one's speedy trial rights is to be determined by considering four factors, i. e.: length of the delay, reasons for the delay, assertion of the right of defendant (demand), and prejudice to the defendant caused by the delay.

■ We agree that non-compliance with the four-prong test entitles a defendant, so denied a speedy trial, to a dismissal. *See United States v. Latimer*, 511 F.2d 498 (10th Cir. 1975). However, a defendant's right to a speedy trial is triggered after he becomes an "accused", *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), or, as in this case, at the time Ramirez was indicted.

■ As previously noted, Ramirez was indicted on February 1, 1974. Thereafter, various law enforcement agencies tried to ascertain his whereabouts. They were unsuccessful until October 22, 1974, when they were apprised that Ramirez was an inmate of the New Mexico State Penitentiary. The record does not indicate that the various law enforcement groups made repeated and substantial efforts to find Ramirez. Furthermore, it is uncontested that the Marshal's office "dropped the ball" and did not "follow up" on a determination of Ramirez's whereabouts in its normal manner. Even so, Ramirez concedes that no evidence was presented "to the effect that the delay on the part of the Government was intentional." Under these circumstances we must apply the *Barker v. Wingo* tests in order to ascertain if the delay violated Ramirez's right to a speedy trial.

The total delay between indictment return and trial was ten months. However, a detainer was not lodged against Ramirez until October 22, 1974, only some six weeks prior to trial, and he was notified of it three days later. Within three weeks thereafter Ramirez filed a motion to dismiss. Therefore, any real delay to Ramirez's right to a speedy trial was actually somewhat less than nine months.

While the record is unclear as to the reasons for the delay, it is apparent that despite repeated though perhaps inept efforts by the Marshal's office, Ramirez's whereabout was not ascertained. We recognize that the Marshal's Office was without the services of the N.C.I.C. computer service and that it was handicapped in that it had only "the name Johnny Ramirez to go on". Even so, we do not condone the manner in which it pursued return of the indictment. In our judgment, the delay was the result of inefficient internal operations within the Marshal's office, and lack of proper coordination with other law enforcement agencies. Even so, the ten month delay, albeit occasioned by the federal authorities, did not deprive Ramirez of his right to a speedy trial because he was not prejudiced thereby. The record is completely devoid of any showing of prejudice to Ramirez resulting from the delay.

Ramirez argues that he was prejudiced in that he was convicted of "both state and federal drug-related offenses [which occurred] during the same week in October, 1973" and that he "has lost the possibility of being given concurrent sentences." Such is not the prejudice contemplated by the Court in *Barker v. Wingo*:

. . . A fourth factor is prejudice to the defendant. Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.

407 U.S. at 532, 92 S.Ct. at 2193.

Ramirez's claimed prejudice is not of a personal character such as adverse eco-

nomic and social consequences, resulting from a long "cloud" of suspicion or undue and prolonged anxiety on his part. Nor is the prejudice related to death of a witness or other loss of witnesses. In short, the record is devoid of any *Barker v. Wingo* prejudice.

We hold that the delay did not prejudice Ramirez, who was incarcerated less than six weeks from the time the detainer was lodged until he was tried. Ramirez suffered no anxiety and concern prior to appearing before the magistrate on November 7, 1974 in light of his admission that he was unaware of the charges against him until after the detainer was lodged. There are no contentions or showings before us that the delay impaired Ramirez's ability to defend, or his ability to recollect with detailed clarity the events of the week of the crime.

We have considered *Hoskins v. Wainwright*, 440 F.2d 69 (5th Cir. 1971), and *United States v. Harmon*, 379 F.Supp. 1349 (D.N.J.1974), cited by Ramirez as supportive of his contention that he was denied his right to a speedy trial. However, the eight and one-half year delay in *Hoskins* and the six year delay in *Harmon* present factual situations distinctly distinguishable from the ten month delay occasioned here. We do not deem these decisions controlling.

We are not inclined, as Ramirez urges, to utilize our "supervisory powers" [*United States v. Crawford*, 466 F.2d 1155 (10th Cir. 1972)] to correct an injustice caused by federal officers. The delay was not prejudicial to Ramirez. *See United States v. Goeltz*, 513 F.2d 193 (10th Cir. 1975); *United States v. MacKay*, 491 F.2d 616 (10th Cir. 1973), cert. denied, 419 U.S. 1047, 95 S.Ct. 619, 42 L.Ed.2d 640 (1974); *United States v. Spoonhunter*, 476 F.2d 1050 (10th Cir. 1973); *United States v. Taylor*, 465 F.2d 1199 (10th Cir. 1972).

■ Most of the decisions involving claims of deprivation of due process rights require specific showing of *identifiable prejudice* to the accused affecting his substantial rights. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); *United States v. Quinones Gonzalez*, 452 F.2d 964 (10th Cir. 1971); Rule 52(a), Fed.R.Crim.P., 18 U.S.C.A. There must, at the least, be proof of a *probability* that prejudice will result from that which is deemed inherently lacking in due process. *Estes v. Texas*, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965). No such probability has been displayed here.

We affirm.