**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Willis Edward WALKER, Defendant-Appellant.**

**No. 74–1726.**

United States Court of Appeals, Tenth Circuit.

Argued July 10, 1975.

Decided Nov. 10, 1975.

Before CLARK,* Associate Justice, and HILL and BARRETT, Circuit Judges.

HILL, Circuit Judge.

Appellant was convicted of kidnaping under 18 U.S.C. § 1201 and of interstate transportation of a stolen motor vehicle in violation of the Dyer Act, 18 U.S.C. § 2312. The case was tried to the court. Appellant raises several points on appeal, placing his major emphasis on his unsuccessful defense of insanity. Because each of appellant's points depends largely on the sufficiency of the government's evidence to prove the elements of the crimes charged, we will first detail the facts.

The events leading to this prosecution occurred during a prison escape by appellant and Robert Jeffrey Murren, a co-defendant at trial. The two were inmates at the Wyoming State Penitentiary in Rawlins, Wyoming. Appellant was the editor of the prison news magazine and Murren was the assistant editor. Appellant also wrote articles for the local newspaper in Rawlins. When the articles were completed, appellant was permitted to deliver them personally to the editor at the newspaper office.

On March 13, 1974, appellant and prison social worker Kenneth Roy Warner went to the Rawlins newspaper office to submit an article, but decided to return the next day because the editor was not there. During the afternoon of March 14, 1974, Warner again checked appellant out of the institution to go to downtown Rawlins and submit the article. Appellant convinced Warner that Murren should be permitted to go along, and the three traveled downtown in a 1970 Pontiac station wagon owned by the State of Wyoming.

Before they went to the newspaper office, appellant asked Warner to take them to a Gibson's store on the east side of Rawlins so he could buy a birthday card for his mother, but Warner refused.

L. B. Ullstrom, Denver, Colo., for defendant-appellant.

J. Terry Wiggins, Asst. U. S. Atty. (James L. Treece, U. S. Atty., Denver, Colo., on the brief), for plaintiff-appellee.

* Associate Justice, United States Supreme Court, Retired, sitting by designation.

They spent a short time at the newspaper office and then Warner went with them across the street to a store where appellant bought a card. When they got back in the station wagon, appellant put a screwdriver to Warner's side and told him to move over or he was "going to get it." Murren took the wheel, and they headed east towards Laramie, keeping Warner as a hostage.

After they were underway, appellant told Warner they had planned the escape the night before and that Warner was to be the hostage because they thought he would not panic. Appellant said they had planned to take over the automobile at the Gibson's store and had planned to use the Snowy Range Road as an around-about way to Laramie. Appellant also discussed letting Warner go at different locations along the way. Appellant once told Warner he would be tied to a tree with tape from which he could escape, and, in case he did not, appellant would call a priest in Denver and tell him how to find Warner. At Warner's urging, appellant threw the screwdriver out the window.

On the Snowy Range Road a tire on the station wagon went flat. When they stopped to change it, Warner attempted to get away and was able to run about half a mile before appellant caught him and took him back. Appellant subsequently kept a tire iron in hand in case Warner tried anything else. The Snowy Range Road was blocked by snow and appellant decided they should stop and wait until dark before moving on. During the five-hour wait, snow continued to fall. Appellant thought he saw faces and lights in the snow and would get out and investigate every time they heard a noise. They discussed their escape plans and appellant stated his intention to use Warner to get through a roadblock if necessary.

After dark they started driving again, but headed towards Colorado rather than Laramie. The plan at that point was to go to Denver. Subsequently, appellant decided they should go to Steamboat Springs, Colorado, and get drunk. War-

ner testified that throughout the episode appellant kept changing his plans, talked incessantly, and tried to tell jokes but no one would laugh.

In the early morning hours of March 15, 1974, they arrived in Hideaway Park, Colorado. Under circumstances not relevant here, sheriff's officers there captured appellant and Murren and freed Warner.

■ Appellant first contends the government failed to prove all the elements of kidnaping under 18 U.S.C. § 1201. He contends there was no asportation or "carrying away" because the movement of the victim was "merely incidental" to the underlying crime of escape. He also contends that holding the victim to aid an escape does not satisfy the statutory requirement that the victim be held for "ransom or reward or otherwise." The authority cited by appellant does not support these contentions and we find no merit in them. Obviously, the crime of escape may be committed without a kidnap. The kidnaping here was not incidental to the escape, but was for the express purpose of aiding the escape. Appellant stated he intended to use the hostage to avoid capture at a roadblock. The cases are squarely against appellant on both points and leave no doubt that kidnap to aid an escape is a violation of 18 U.S.C. § 1201. *United States v. Stidham*, 459 F.2d 297 (10th Cir. 1972); *United States v. Sierra*, 452 F.2d 291 (10th Cir. 1971); *see United States v. Healy*, 376 U.S. 75, 84 S.Ct. 553, 11 L.Ed.2d 527 (1964); *DeHerrera v. United States*, 339 F.2d 587 (10th Cir. 1964).

■ Appellant next contends the government failed to prove an essential element of the Dyer Act charge. He questions whether the station wagon used in the escape was "stolen" within the meaning of the Act because Warner, the person lawfully in possession, remained in it at all times and was returned to possession after appellant's arrest. However, appellant admits in his brief that this case "appears to fall into

the category of 'joyriding' " and that interstate joyriding is a violation of the Dyer Act. *Lawrence v. United States*, 445 F.2d 652 (5th Cir. 1971), *cert. den'd*, 404 U.S. 861, 92 S.Ct. 161, 30 L.Ed.2d 104. Appellant also admits there was at least "unauthorized use". The term "stolen" in 18 U.S.C. § 2312 includes all felonious takings with intent to deprive the owner of the rights and benefits of ownership regardless of whether the theft constituted common law larceny. *United States v. Turley*, 352 U.S. 407, 77 S.Ct. 397, 1 L.Ed.2d 430 (1957); *McCarthy v. United States*, 403 F.2d 935 (10th Cir. 1968). Under this definition the evidence amply supports a finding that the vehicle was stolen.

■ Appeal is also taken from the admission into evidence of a confession made by appellant after he was in custody and had been apprised of his rights. Appellant claims his fear of returning to the Wyoming State Penitentiary and his consequent desire to be incarcerated instead in a federal prison renders the confession involuntary. The trial court conducted a hearing to determine the voluntariness of the statement and appellant does not quarrel with the legal standards applied. Because the decision appealed is one of fact, we must accept the trial court's finding unless it is clearly erroneous. *Wren v. United States*, 352 F.2d 617 (10th Cir. 1965), *cert. den'd*, 384 U.S. 944, 86 S.Ct. 1469, 16 L.Ed.2d 542; *Hall v. United States*, 418 F.2d 1230 (10th Cir. 1969). Appellant has presented nothing on appeal upon which we could base such a finding.

■ Finally, appellant argues that the government failed to prove him sane beyond a reasonable doubt. The test for determining criminal responsibility in this circuit was enunciated in *Wion v. United States*, 325 F.2d 420, 430 (10th Cir. 1963), *cert. den'd*, 377 U.S. 946, 84 S.Ct. 1354, 12 L.Ed.2d 309. The trier of fact

> must be convinced beyond a reasonable doubt that at the time the accused committed the unlawful act, he was mentally capable of knowing what he was doing, was mentally capable of knowing that it was wrong, and was mentally capable of controlling his conduct.

The trial court properly applied this standard and the question is purely one of the sufficiency of the evidence.

Appellant and the government each called a psychiatrist as an expert witness. Dr. John Gordon, appellant's witness, testified he had spent five and one-half hours interviewing appellant and had discussed appellant's history with his sister and mother. Dr. Gordon also heard all the evidence at the trial. He testified that appellant was suffering from schizophrenia, but that the illness was not a static condition. At times appellant would be in touch with reality and be capable of controlling his conduct and at other times he would not. Dr. Gordon testified that appellant's compulsive or "pressure" speech, his mood changes, his inability to make up his mind on the escape plans, his seeing lights and faces in the snow, and other behavior during the course of the kidnap and escape confirmed his diagnosis that appellant was at that time not mentally capable of controlling his conduct.

The government's expert witness, Dr. J. F. Montague, had spent only one hour with appellant and did not hear the other testimony at the trial. He agreed that appellant was a sociopath, which is a form of mental illness, but disagreed with the diagnosis of schizophrenia. He concluded that appellant was sane and capable of controlling his conduct at the time of the alleged crimes. In his opinion appellant was rational and intelligent. The government also recalled Warner, the kidnap victim, who testified that appellant acted no differently during the escape than he had during the previous four months he had known him.

■ Appellant argues that more weight should be given to Dr. Gordon's testimony because he studied appellant's

mental condition in greater depth. However, the credibility and weight to be given the testimony is not a question for an appellate court; that is for the trier of fact. *United States v. Miles*, 449 F.2d 1272 (10th Cir. 1971); *Turner v. Ward*, 321 F.2d 918 (10th Cir. 1963). The conflicting nature of the evidence in this case is similar to that in *United States v. Stewart*, 443 F.2d 1129 (10th Cir. 1971), and *United States v. Coleman*, 501 F.2d 342 (10th Cir. 1974). In *Stewart* the testimony of two expert witnesses for the defendant was contradicted by the testimony of one expert witness and a lay witness for the government. In *Coleman* the testimony of a psychiatrist called by the defendant was rebutted by the testimony of several lay witnesses as to concrete facts and observations rather than opinion. In both cases we held the evidence was sufficient as a matter of law. We hold the evidence in the present case was likewise sufficient, and we will not overturn the trial court's judgment on matters concerning credibility and weight of the testimony.

Appellant also argues that his expert witness, Dr. Gordon, was unduly limited by the trial court in the manner he was allowed to testify. We have examined the record and find that Dr. Gordon was given ample latitude to fully express his opinion and the reasons for it.

Affirmed.