**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Annette Knotts RADMALL, Defendant-Appellee.**

No. 77–1878.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Aug. 9, 1978.

Decided Nov. 16, 1978.

Rehearing Denied March 6, 1979.

Ronald J. Rencher, U. S. Atty., Salt Lake City, Utah (James W. McConkie, Asst. U. S. Atty., Salt Lake City, Utah, on the brief), for plaintiff-appellant.

Craig M. Snyder, Provo, Utah (Howard, Lewis & Petersen, Provo, Utah, on the brief), for defendant-appellee.

Before McWILLIAMS, BARRETT and McKAY, Circuit Judges.

McWILLIAMS, Circuit Judge.

By an indictment returned on November 17, 1976, Annette Knotts Radmall, head teller of a federally insured savings and loan association, was charged in eight counts with embezzling some $5,330 from her employer in violation of 18 U.S.C. § 657. Each of the eight counts was based on a separate transaction, the earliest transaction occurring on or about January 7, 1972, and the last transaction occurring on or about October 4, 1972.

Shortly prior to trial, the defendant filed a motion to dismiss based on pre-indictment delay. The motion pointed out that the indictment was returned more than four years after the most recent offense charged, and nearly—though not quite—five years after the earliest offense charged.* This motion was supported by affidavits from both the defendant and her attorney. The latter based his declarations on his inspection of the Government files, and he concluded therefrom that the delay was caused by the Government's desire to obtain additional evidence and to also re-interview the defendant before submitting the matter to the Grand Jury, coupled with the additional fact that other cases awaiting submission to the Grand Jury were deemed to be of a more pressing nature. The defendant in her affidavit declared, in effect, that the delay of over four years had dimmed her memory as to the "thousands of transactions" she had handled.

The trial court declined to hear the motion to dismiss prior to impaneling the jury. However, after the jury had been sworn, and before any evidence was offered, the trial court, after hearing argument on the motion, granted the motion and dismissed the indictment. In the order of dismissal, the trial judge concluded that the Government's delay in prosecuting the matter was "intentional, continuous, unreasonable, and prejudiced the defendant and violates defendant's rights to due process of law under the Fifth Amendment of the United States Constitution." The Government now appeals the order of dismissal under 18 U.S.C. § 3731. We reverse.

On appeal the defendant does not claim that 18 U.S.C. § 3731 is inapplicable on the ground that the Double Jeopardy Clause of the Fifth Amendment would bar bringing her to trial again. Such an argument would appear to be foreclosed by *United States v. Scott*, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978). Hence, the only

---

* 18 U.S.C. § 3282 provides that no person shall be prosecuted, tried or punished for any non-capital offense unless the indictment is found within five years next after such offense shall have been committed.

issue is whether, under the record, the Due Process Clause of the Fifth Amendment mandated a dismissal of the indictment. We think it did not.

Both the Government and the defendant rely upon *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). In that case the Supreme Court spoke as follows:

> Nor have appellees adequately demonstrated that the pre-indictment delay by the Government violated the Due Process Clause. No actual prejudice to the conduct of the defense is alleged or proved, and there is no showing that the Government intentionally delayed to gain some tactical advantage over appellees or to harass them. Appellees rely solely on the real possibility of prejudice inherent in any extended delay: that memories will dim, witnesses become inaccessible, and evidence be lost. In light of the applicable statute of limitations, however, these possibilities are not in themselves enough to demonstrate that appellees cannot receive a fair trial and to therefore justify the dismissal of the indictment. Events of the trial may demonstrate actual prejudice, but at the present time appellees' due process claims are speculative and premature.

This Circuit has applied the *Marion* rule in numerous cases. See, for example, *United States v. Redmond*, 546 F.2d 1386 (10th Cir. 1977); *United States v. Villano*, 529 F.2d 1046 (10th Cir. 1976); and *United States v. Beitscher*, 467 F.2d 269 (10th Cir. 1972). In those cases we have held that pre-indictment delay, where the indictment is nonetheless returned within the applicable statute of limitations, does not violate the Due Process Clause of the Fifth Amendment in the absence of a showing of actual prejudice to a defendant and a further showing that such delay was purposely designed by the Government to gain either a tactical advantage over a defendant or to harass him.

Applying the rule enunciated in the cases above referred to, the record in the instant case does not show that the pre-indictment delay was caused by a purposeful effort on the part of the Government to gain a tactical advantage over the defendant. To the contrary, it would appear that the delay was primarily caused by a desire on the part of the Government to be more certain of its case before submitting the matter to the Grand Jury, coupled with a belief that other cases were of a more urgent nature. Furthermore, the defendant's claim of prejudice is couched in very conclusory terms. Under *Marion*, a mere dimming of memory would not be sufficient to show prejudice. On the question of prejudice, see *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977), where the Supreme Court held that to prosecute a defendant following pre-indictment delay does not deprive him of due process, even if his defense may have in fact been "somewhat prejudiced" by the lapse of time.

Judgment reversed, and case remanded with directions that the indictment be reinstated, further proceedings to be consonant with the views herein expressed.

BARRETT, Circuit Judge, concurring:

I fully concur in the opinion by Judge McWilliams.

Any assertion that the District Court conducted an "evidentiary hearing" on Radmall's motion to dismiss which brings into play the "clearly erroneous" rule upon review of that court's "findings of fact" is, in my view, without merit.

Judge McWilliams has noted that the trial court granted the motion to dismiss for pre-indictment delay *after* the jury was impaneled and "before any evidence was offered." The motion was granted based on oral arguments of counsel, the pleadings and two affidavits attached to the motion, one of which was executed by Radmall and one executed by her counsel.

In my view, the affidavits are both self-serving and conclusory. Neither affiant gave "live" testimony, subject to cross-examination. Thus, there was no way the trial court could assess the credibility of the

affiants or determine the weight to be given their written statements. Direct, "live" testimony, subject to cross-examination, provides the trial court or the jury, as the case may be, with the *only* true means ·of assessing credibility, taking into consideration the general demeanor and appearance of the witness and arriving at meaningful findings of fact on critical issues. *United States v. Downen*, 496 F.2d 314 (10th Cir. 1974), *cert. denied*, 419 U.S. 897, 95 S.Ct. 177, 42 L.Ed.2d 142 (1974); *United States v. Sierra*, 452 F.2d 291 (10th Cir. 1971). Affidavits serve various purposes under court rules. They do not serve as a substitute for direct "in-court" testimony where the burden of establishing *cause* rests with the movant.

It is fundamental that if a claim is patently frivolous and without merit, on its face, a motion to dismiss should be granted absent an attached affidavit. By the same token, summary judgment may be rendered if the pleadings, affidavits, depositions and other documentary material clearly reveal that there is no genuine issue as to a material fact and the only issue is one of law. These rules do not apply to the case at bar.

In *Jackson v. Griffith*, 480 F.2d 261 (10th Cir. 1973) the late Chief Judge Orie L. Phillips, writing for this Court, stated that affidavits filed in support of a motion for summary judgment were not a substitute for a trial:

> While the rule provides for the filing of affidavits, their sole purpose is to show whether any issue of material fact exists. The rule does not serve as a substitute for a trial and bona fide factual disputes may not be disposed of through the use of affidavits.

480 F.2d at p. 267.

*See also:* *Machinery Center, Inc. v. Anchor National Life Ins. Co.*, 434 F.2d 1 (10th Cir. 1970); *Hanley v. Chrysler Motors Corporation*, 433 F.2d 708 (10th Cir. 1970).

In *United States v. Revada*, 574 F.2d 1047 (10th Cir. 1978), the trial court granted a motion to dismiss the indictment based upon allegations set forth in the motion, an affidavit executed by defendant Revada attached thereto, and a memorandum submitted by defendant's counsel. The Court entertained oral statements of defendant's counsel and brief statements by the Government attorney in resistance thereto before granting the motion. *This Court reversed and remanded because the trial court's failure to conduct an evidentiary hearing resulted in a "very meager" record.* Upon remand the trial court was directed to:

> . . . provide an evidentiary hearing on the existence of actual prejudice to the defense *and* whether the reasons for the delay were improper under the *Marion* and *Lovasco* decisions. See *United States v. Stoddart*, 574 F.2d 1050 (10th Cir. 1978), filed this day. (Emphasis in original text.)

574 F.2d at p. 1050.

In *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), the Supreme Court reversed a dismissal of an indictment grounded upon a motion of the defendant based on constitutional due process grounds. The remand order concluded:

> Events of the trial may demonstrate actual prejudice, but at the present time appellees' due process claims are speculative and premature.

404 U.S. at p. 326, 92 S.Ct. at p. 466.

The *Marion* and *Lovasco* decisions require that a criminal defendant must show actual prejudice and the intent on part of the prosecution to gain an advantage or to harass him with respect to preindictment delay. I believe that it is clear that adequate factual findings on these critical issues can be made only on the basis of *testimony* at an evidentiary hearing. *See:* *Sherman v. American Federation of Musicians*, 588 F.2d 1313 (10th Cir. 1978); *United States v. Walker*, 524 F.2d 1125 (10th Cir. 1975); *Wren v. United States*, 352 F.2d 617 (10th Cir. 1965), *cert. denied*, 384 U.S. 944, 86 S.Ct. 1469, 16 L.Ed.2d 542 (1965); *Matthews v. United States*, 569 F.2d 941 (5th Cir. 1978); *United States v. Dansker*, 565 F.2d 1262 (3rd Cir. 1977), *cert. dismissed*, 434 U.S. 1052, 98 S.Ct. 905, 54 L.Ed.2d 805 (1978); *United States v. Crutch*, 461 F.2d

1200 (2nd Cir. 1972), *cert. denied*, 409 U.S. 883, 93 S.Ct. 172, 34 L.Ed.2d 139 (1972); *United States v. Penland*, 429 F.2d 9 (9th Cir. 1970). In my judgment, this standard blends with the rule that where there is substantial evidence in the record to support the findings of the trial court, those findings will not be disturbed on appeal. *United States for Use and Benefit of Clark Engineering v. Freeto Construction Company*, 547 F.2d 537 (10th Cir. 1977).

Claims of deprivation of due process rights require specific showing of identifiable prejudice to the accused affecting his substantial rights. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); *United States v. Ramirez*, 524 F.2d 283 (10th Cir. 1975); Fed.R.Crim.P., rule 52(a), 18 U.S.C.A.

McKAY, Circuit Judge, dissenting:

I am uncomfortable with our continued adherence to an excessively narrow interpretation of the *Marion* standard for due process violations in cases involving pre-indictment delay. Not only does our interpretation of the standard run counter to the Supreme Court's recent discussion of pre-indictment delay problems in *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977), but it seems to be removed from the underpinnings of *Marion* itself. Even under our narrow approach to the problem, however, I believe a different result should be reached in this case. Since we are reviewing a trial court finding that the *Marion* rule was violated, application of the proper standard of appellate review dictates affirmance of the District Court.

In *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), the Supreme Court observed that the statute of limitations did not fully define the pre-indictment rights of a defendant. The Due Process Clause of the Fifth Amendment was said to require dismissal of a criminal indictment in certain circumstances. The Court did not delineate the particular circumstances in which due process would re-

quire this result, but left the determination to "delicate judgment based on the circumstances of each case." *Id.* at 325, 92 S.Ct. at 466. Indeed, the Court indicated it would be "unwise" to forecast its decision in other cases involving pre-indictment delay. *Id.*

One example of the circumstances that could give rise to a dismissal was provided by the Court:

> Thus, the Government concedes that the Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial that the pre-indictment delay in this case caused substantial prejudice to appellees' rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused.

*Id.* at 324, 92 S.Ct. at 465. The discussion does not indicate that the Government's concession was to be taken as the minimum standard for due process violation. I believe it represents only a flagrant example of due process abuse.

Certain decisions of this Court, however, have suggested that the example constitutes the rule. *See, e. g., United States v. MacClain*, 501 F.2d 1006 (10th Cir. 1974); *United States v. Beitscher*, 467 F.2d 269 (10th Cir. 1972). Even if the language of *Marion* can be construed to support our narrow rule, I believe we should modify our position in light of *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977). In that case the Court said that to establish a due process violation, the defendant had to show both prejudice to his cause and an unconstitutional reason for the delay. While it is apparent that delay caused by an intent to harass the defendant or to gain a tactical advantage over him would not pass constitutional muster, the Court did not rule out the possibility that other unconstitutional reasons might exist. As in *Marion*, the Court indicated that it would leave to lower courts "the task of applying the settled principles of due process that we have discussed to the particular circumstances of individual cases." *Id.* at 797, 97 S.Ct. at 2053. The Court also observed that

so few defendants have established that they were prejudiced by delay that neither this Court nor any lower court has had a sustained opportunity to consider the constitutional significance of various reasons for delay.

*Id.* at 796–97, 97 S.Ct. at 2052. The obvious implication of this comment is that, in the view of the Supreme Court, there may be constitutionally significant reasons for delay other than to harass the defendant or to obtain a tactical advantage over him.

This Circuit's adherence to a narrow interpretation of the *Marion* rule prevents us from considering other types of delay that may violate due process. Furthermore, the rule binds us to a standard that is extremely difficult for a defendant to meet. Not only must the defendant show actual prejudice, but he must demonstrate that the Government was subjectively motivated by the sort of personal animus inherent in harassment or the kind of machiavellian machinations involved in obtaining tactical advantage. Given the practical difficulties in showing such motivations, our narrow rule takes on the trappings of a literary curiosity fit more for ritual invocation than practical application.

I do not quarrel with the proposition that the statute of limitations is the basic protection in this area. Neither do I take issue with the requirement that a defendant show both prejudice and a proscribed reason for the delay. What I object to is a rule formulation that eradicates the defendant's due process protections unless he can meet the stringent test imposed by our narrow reading of *Marion.*

Even if our strict rule were to be applied in this case, however, I believe we should affirm the judgment below. This result follows from the fact that our standard of appellate review removes us one step from the process of applying the *Marion* rule to a given set of facts. Instead, we are required to apply a clearly erroneous standard to the findings of the trial court.[1] I believe those findings require us to sustain the result below.

The District Court's dismissal of the indictment came after an evidentiary hearing. Various findings of fact were made in connection with the District Court's conclusion that the pre-indictment delay was "intentional, continuous, unreasonable and prejudiced [sic] to the defendant and violates defendant's right to due process of law under the Fifth Amendment of the United States Constitution." As an appellate court, we are not in a position to re-try the facts. Instead, we must accept the findings of the trial court unless they are clearly erroneous.

The District Court indicated that several types of actual prejudice had been suffered by the defendant due to the more than four-year delay between the alleged criminal activity and the issuance of the indictment. The court specifically found that "essential witnesses which would have been available had the prosecution moved forward in a timely manner are no longer available to the defendant." It also determined that she was unable to reconstruct the individual transactions out of which the alleged embezzlements arose. Further, the court found that records which would have been helpful in reconstructing the events and refreshing the defendant's recollection were no longer obtainable. We are not asked in this case to review simple allegations of diminished recollection and litigation inconvenience; instead, we are dealing with well-supported findings of fact.

The District Court also made findings on the reasons for delay. It found that the delay had been caused by "unavailability of prosecutors, lack of attention to the case, backlog of cases in the United States Attorney's office and more pressing matters." A single investigatory effort conducted more

---

1. This Circuit has repeatedly applied the clearly erroneous standard to findings of fact in criminal cases on issues other than guilt. *E. g., Crail v. United States,* 430 F.2d 459, 460 (10th Cir. 1970); *Lucero v. United States,* 425 F.2d 172, 173 (10th Cir. 1970) (per curiam); *Wren v. United States,* 352 F.2d 617, 618–19 (10th Cir. 1965), *cert. denied,* 384 U.S. 944, 86 S.Ct. 1469, 16 L.Ed.2d 542 (1966). The Supreme Court has also applied the standard in criminal contexts. *E. g., Campbell v. United States,* 373 U.S. 487, 493, 83 S.Ct. 1356, 10 L.Ed.2d 501 (1963).

than a year after the Assistant United States Attorney felt ready to present the case to a grand jury was "almost entirely duplicitous of information already furnished by the Department of Justice to the United States Attorney's office in 1973." The indictment was not returned until November 17, 1976, nearly two years after the duplicitous investigation had been completed.

The findings of the District Court sufficiently establish a violation of the *Marion* standard. In the context of a complicated embezzlement action in which the defendant's case depended on the recollection of thousands of individual financial transactions, the availability of temporarily retained records, and the testimony of relatively transient witnesses, the Government's decision to delay for more than three years the prosecution of the case in the face of the Assistant United States Attorney's expressed readiness to proceed, circumstantially establishes an intent to obtain tactical advantage over the defendant. Absent a governmental confession of purposeful delay, it is difficult to imagine how such an intent could be otherwise shown. Certainly a prohibited purpose is implicit in the conclusion of the trial court. It may be reasonably inferred from the facts themselves.[2] *See, e. g., United States v. Alderman*, 423 F.Supp. 847, 857 (D. Md. 1976); *United States v. Harmon*, 379 F.Supp. 1349, 1351 (D.N.J. 1974). Finally, it is apparent that a tactical advantage was obtained—the defendant's case was indeed prejudiced.

In order to reverse the trial court, we must demonstrate that the findings of fact and the reasonable inferences drawn therefrom are clearly erroneous. This we have failed to do. I would therefore affirm.

---

2. When, from facts that have been found, additional facts may be inferred which will support the trial court's judgment, those inferences will be deemed to have been made. *See Manning v. Jones*, 349 F.2d 992, 996 (8th Cir. 1965); *Zimmerman v. Montour R. R.*, 296 F.2d 97, 98 (3d Cir. 1961), *cert. denied*, 369 U.S. 828, 82 S.Ct. 845, 7 L.Ed.2d 793 (1962); *Triangle Conduit & Cable Co. v. Federal Trade Comm'n*, 168 F.2d 175, 179 (7th Cir. 1948), *aff'd sub nom., Clayton Mark & Co. v. Federal Trade Comm'n*, 336 U.S. 956, 69 S.Ct. 888, 93 L.Ed. 1110 (1949).