891 F.2d 287
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
John Anthony TAYLOR, Defendant-Appellant.
 No. 88-5177.
 United States Court of Appeals, Fourth Circuit.
 Submitted: Aug. 4, 1989.
Decided: Nov. 9, 1989.
Reconsideration Granted, Ponion Amended Dec. 1, 1989.
 
 John Gregory, Jr., on brief, for appellant.
 John P. Alderman, United States Attorney, Jennie L. Montgomery, Assistant United States Attorney, on brief, for appellee.
 Before HARRISON L. WINTER and MURNAGHAN, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 On March 9, 1988, while John Anthony Taylor was incarcerated awaiting trial for bank robbery, he was taken to a medical clinic for a doctor's appointment. After his appointment, when U.S. Marshals were escorting him through the parking lot to the marshals' automobile, two armed assailants appeared from behind a parked car and held the marshals at gunpoint, shouting for them to freeze and not to move. Barry Dotson, one of the assailants, pointed his revolver at one of the marshals, Michael D. Thompson. Taylor also joined the endeavor to locate Thompson's gun, grabbing at him in the process. Dotson by then was engaged in attempting to disarm the other marshal, Sherry Harrison. Dotson's attention was diverted when Tina Marie Julian, his fellow assailant, called out that she had ascertained the whereabouts of Thompson's firearm. Thereupon Marshal Thompson shot Dotson twice and, acting in a continuous motion, shot Julian twice, knocking Taylor to the ground. Both Dotson and Julian were killed instantly. The entire activity in the parking lot required only a few seconds.
 
 
 2
 Julian turned out to be the girlfriend of Taylor and Dotson was someone recruited to take part in the attempt to free Taylor. Taylor's participation in planning for the efforts to secure his escape from the marshals was sufficiently established through correspondence and other intrinsic evidence. Conspiracy to effect Taylor's escape was acknowledged by Taylor, as well as the momentary detention of the marshals necessary to effect the escape.
 
 
 3
 Taylor was charged in a criminal indictment with:
 
 
 4
 (1) conspiring unlawfully to seize, confine, inveigle, decoy, kidnap, abduct or carry away and hold for ransom, reward and otherwise the two marshals while engaged in the performance of their official duties. The charge was under 18 U.S.C. § 1201(A)(5). Section 1201 is headed "Kidnaping" [sic];
 
 
 5
 (2) willfully and knowingly in violation of 18 U.S.C. §§ 1201(a)(5) and 1114 and 2 to seize, confine, inveigle, decoy, kidnap, abduct or carry away and hold for ransom, reward and otherwise the two marshals while engaged in the performance of their official duties;
 
 
 6
 (3) attempting in violation of 18 U.S.C. §§ 1201(a)(5), 1201(d), 1114 and 2 to seize, confine, inveigle, decoy, kidnap, abduct or carry away and hold for ransom, reward and otherwise the two marshals while engaged in the performance of their official duties;
 
 
 7
 (4) in violation of 18 U.S.C. § 372, conspiring to prevent, by force, intimidation and threat, discharge by the marshals of their official duties, to wit: the transportation of a federal prisoner to and from a medical facility. In that connection it was asserted that the marshals were held at gunpoint in an effort to effect the escape of Taylor;
 
 
 8
 (5) under 18 U.S.C. §§ 111, 1114 and 2, use of firearms forcibly to assault, resist, oppose, impede, intimidate and interfere with the marshals while they were engaged in the performance of their official duties;
 
 
 9
 (6) in violation of 18 U.S.C. §§ 924(c) and 2, aiding and abetting through use of a firearm an assault on a federal law enforcement officer; and
 
 
 10
 (7) in violation of 18 U.S.C. §§ 751(a) and 2, attempting to escape.
 
 
 11
 Following trial, Count 3 was dismissed. Taylor was found guilty on the other counts and sentenced to life. What happened on March 9, 1988 is not subject to question here since there was adequate, indeed substantial, evidence to establish the attempted escape, the interference with the liberty of the marshals and related circumstances. The principal argument of Taylor focuses on the contention that, the marshals not having been taken away from the scene of the attempted escape, they were not kidnapped. Taylor advances several state law definitions of kidnapping in support of his contention.
 
 
 12
 Such a contention would have had greater force when interstate commerce was the jurisdictional component of the statute. E.g., Smith v. United States, 360 U.S. 1, 8 (1959). However, in 1984, section (5) was added to 18 U.S.C. § 1201 making, inter alia, seizure of marshals and deputy marshals while in the performance of official duties subject to the act. So, in such cases, interstate commerce, usually in the form of taking from the scene and the crossing of a state line, to provide a jurisdictional underpinning, was no longer a lone requisite as a basis for jurisdiction. See United States v. Lewis, 662 F.2d 1087 (4th Cir.1981), cert. denied, 455 U.S. 955 (1982).
 
 
 13
 The federal statute lists kidnapping as but one of the unlawful acts: "We agree that at common law 'kidnap' meant to take and carry a person by force and against his will. But the title of the statute is not determinative and Congress has made unlawful much more than strict kidnapping as defined at common law." United States v. Young, 512 F.2d 321, 323 (4th Cir.1975), cert. denied, 424 U.S. 956 (1976). A seizure requiring the captive to accompany the person or persons engineering the escape in order to effectuate the escape does not render the statute inapplicable simply because escape was the objective and the seizure only incidental thereto. United States v. Walker, 524 F.2d 1125, 1127 (10th Cir.1975). One must appreciate the difference between the statute's significance for jurisdictional purposes and its meaning in substantive contexts.
 
 
 14
 It is to be borne in mind that the keys to the marshals' car were grabbed out of the hands of Thompson. To concentrate on "kidnapping" while ignoring all the other offenses referred to in the statute is to misperceive its purpose. The seizure of the marshals was not only incidental to the escape, it was done expressly to aid the escape. "The involuntariness of seizure and detention ... is the very essence of the crime of kidnapping." Chatwin v. United States, 326 U.S. 455, 464 (1946).
 
 
 15
 Taylor further advanced a claimed due process violation through the admission of testimony during the sentencing phase from a clinical psychologist, as well as from relatives of both the perpetrators of the crime and the victims. The clinical psychologist indicated that the effects of a crime of violence were not limited solely to the victims, themselves, but to their family members as well, the family members of those attempting to perpetrate the crime, and even to the public in general. Such information bearing on sentencing, not on guilt or innocence, was within the discretion of the district court to admit. 18 U.S.C. § 3661 provides:
 
 
 16
 No limitation shall be placed on the information concerning the background, character and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.
 
 
 17
 Cf. Federal Sentencing Guideline Sec. 1B1.4.
 
 
 18
 The Sentencing Guidelines are applicable in this case, the offense having occurred after November 1, 1987, and Taylor qualifies as a career offender under Guideline 4B1.1. He therefore reached a total offense level of 37 and a Criminal History Category VI. The range of his sentence was, therefore, 360 months to life. Taylor was 43 years old in January 1987. A mandatory 10-year consecutive sentence was also required under Count 6. Under the circumstances, therefore, it was not surprising that the district judge concluded:
 
 
 19
 I think it matters little what the Court does in this case under the Guideline, whether I give you the minimum or what I do. I think you are going to spend the rest of your days incarcerated unless the Guidelines are thrown out or unless you come back for resentencing.
 
 
 20
 We now turn to certain procedural complaints of Taylor. He waited until the day of trial to indicate that he no longer wanted to be represented by his attorney and was not ready for trial. To raise this question only on the day of trial, though months had elapsed when he could have but had not done so, obviously left it within the discretion of the district court to grant or to deny a continuance.
 
 
 21
 As for Taylor's motion for a change of the venue, the issue involved was dealt with extensively in voir dire. Taylor did not perceive prejudice from his examination of the prospective jurors. Taylor in his brief has admitted: "The Court and counsel conducted a voir dire of potential jurors who were selected randomly from the community. A substantial number of those jurors either had not heard of this case or had heard very little about it. Several jurors, a small minority, indicated they had heard of the alleged incident but could fairly evaluate the evidence in determining guilt or innocence. No juror indicated that he or she was so traumatized by the event that they could not fairly evaluate the evidence."
 
 
 22
 Accordingly, the decision of the district court is AFFIRMED.