933 F.2d 1019
 Unpublished Disposition
NOTICE: Tenth Circuit Rule 36.3 states that unpublished opinions and orders and judgments have no precedential value and shall not be cited except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Faye C. WIEBURG, Defendant-Appellant.
 No. 90-8068.
 United States Court of Appeals, Tenth Circuit.
 May 21, 1991.
 
 ORDER AND JUDGMENT*
 Before LOGAN, JOHN P. MOORE and BALDOCK, Circuit Judges.
 LOGAN, Circuit Judge.
 
 
 1
 Defendant Faye C. Wieburg appeals her conviction for embezzlement of bank funds in violation of 18 U.S.C. Sec. 656.[1] She claims that certain bank documents necessary for her defense were inappropriately destroyed before discovery and that her defense was impaired by the government's failure to notify her before trial of the substance of the testimony of one of the government's rebuttal witnesses. In response to her motion for new trial, the district court held that the circumstances upon which defendant's claims were based did not violate her due process right to a fundamentally fair trial. We affirm.
 
 
 2
 Defendant was the head teller at Wyoming National Bank of Cheyenne, Wyoming (the bank). The bank discovered discrepancies totalling $17,200 in the bank's books and traced the shortfall to entries in defendant's head teller balance sheets for two days, January 12 and 13, 1989. At trial, the government charged that defendant embezzled cash from the bank over a period of months and attempted to disguise the embezzlement in the bank's handling of federal food coupons, which were treated as cash on many of the bank's records at the time. Defendant asserted that in January 1989, after accumulating food coupons from various tellers at the bank over the course of months, she packaged the food coupons valued at $17,200 for shipment to the Federal Reserve Bank in Denver and deposited the package at the bank's customary location for shipment. The bank did not receive credit from the Federal Reserve Bank for the shipment, and neither the Federal Reserve Bank in Denver nor the Federal Reserve Bank in Kansas City had any record of receiving it.
 
 
 3
 On appeal, defendant argues first that bank documents necessary to her defense were inappropriately destroyed before she could acquire them by discovery. Soon after the indictment was issued, defense counsel interviewed several of the bank's tellers, who apparently told him that they transferred food coupons periodically to the holding vault, under defendant's control, to clear the food coupons from their teller drawers. Defense counsel planned to use this testimony to corroborate defendant's testimony. Shortly before trial, however, these tellers individually contacted or were contacted by defense counsel and informed him that they had been mistaken; they had not periodically transferred the food coupons to defendant. That was also their testimony at trial, used to rebut defendant's testimony that she gradually accumulated the food coupons.
 
 
 4
 In response to the changed recollections of the tellers, two days before trial, defendant requested the pertinent tellers' daily transaction journals from the bank. She then discovered that the bank had not saved a complete set of the daily transaction journals for the period during which she claimed she was accumulating food coupons from the bank's tellers. Although she candidly admits that food coupons were not segregated from the tellers' cash on the transaction journals, she postulates that if the figure for a transaction were a rounded one, it would likely represent food coupons, which are issued in increments of five, ten, and twenty dollars. She maintains that under the procedures the bank used at the time, these records were the only documentation that the tellers periodically transferred their food coupons to defendant's control.
 
 
 5
 In denying defendant's motion for new trial, the district court rejected defendant's contentions. It found that "there was no exculpatory value that would have been evident on the face of the evidence before it was destroyed." II R.Supp. 39. The court also found that defendant had not shown that the information for which she sought the tellers' daily transaction journals was unavailable through other means. Id. It stated that defendant could have but did not preserve the preliminary recollections of the tellers that they transferred food coupons to defendant periodically to clear the coupons from their teller drawers. Id. The court further noted that defendant testified that the tellers periodically made such transfers, making the issue one of the credibility of defendant's testimony compared with that of the tellers who testified in rebuttal. Id. The court concluded that even if the material had been exculpatory, the claim that evenly rounded figures would represent food stamps was merely an inference drawn from defendant's expert's testimony in support of her theory, rather than direct evidence of the alleged transfers. Id. at 40.
 
 
 6
 Defendant's second argument on appeal is that the government did not properly notify her before trial of the substance of the testimony of the bank's in-house auditor, who was used by the prosecution as a rebuttal witness. Responding to defendant's assertion that she was storing food coupons in a holding vault behind her work station, the in-house auditor testified that the vault was empty during a general internal audit conducted in August 1988. Under defendant's testimony there would have been several thousand dollars' worth of food coupons stored in the vault at that time. Defendant argues that her defense was compromised because she was unprepared to impeach the witness' testimony. She asserts that the government had a duty to disclose during discovery the identity of the witness and that she was misinformed by the general corporate auditor about whether such an audit or inspection had been performed.
 
 
 7
 In rejecting this argument the district court held that the government had no duty to disclose the identity or prospective testimony of a rebuttal witness. Id. at 43. The court ruled that the government bore no responsibility for any statement made informally by the auditor of the bank's holding company that no audit had been performed on the holding vault, as it was not significant to the substance of the rebuttal witness's testimony. Id. at 42. The court also noted that it was questionable whether the rebuttal witness actually conducted an "audit" since the vault was empty upon inspection. Id. at 41.
 
 
 8
 On appeal, defendant continues to maintain that these events were due process violations under Brady v. Maryland, 373 U.S. 83 (1963). "[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 87. On appeal, "the materiality of withheld evidence under Brady and its possible effect on the verdict are mixed questions of fact and law reviewed de novo." United States v. Buchanan, 891 F.2d 1436, 1440 (10th Cir.1989), cert. denied, 110 S.Ct. 1829 (1990).
 
 
 9
 "The standard of materiality required to set aside a criminal conviction on Brady grounds varies with the specificity of the defendant's request and the conduct of the prosecutor." Id. at 1441. In the case before us, defendant's discovery requests were "boiler plate" pretrial documents, without a hint of specificity or theory of the defense.[2] In addition, there was no showing that the government destroyed the records intentionally or in bad faith.[3]
 
 
 10
 We address first the destruction of individual teller daily transaction journals. Under Buchanan, when the exculpatory information in the possession of the prosecutor may be unknown to the defense and the defendant makes a general discovery request, the prosecutor's "duty to respond derives from the obviously exculpatory nature of the evidence" available to the prosecutor. Id. at 1441. "In this situation, the reviewing court must look to the whole record and determine whether 'the omitted evidence creates a reasonable doubt that did not otherwise exist.' " Id. (quoting United States v. Agurs, 427 U.S. 97, 112 (1976)).
 
 
 11
 We note that defendant, as the former head teller of the bank, had actual knowledge of these records at every phase of the proceedings. Even assuming, however, that she initially overlooked the import of the daily transaction journals to her defense, failure to produce these journals does not violate her due process rights. The government's duty to preserve evidence is "limited to evidence that might be expected to play a significant role in the suspect's defense." California v. Trombetta, 467 U.S. 479, 488 (1984). The journals are not obviously exculpatory, even after one is informed how the defense planned to use them, and we are not persuaded that the information contained in the journals would create a reasonable doubt of appellant's guilt.
 
 
 12
 Defendant's second claim is that the government violated her due process rights by failing to list the in-house auditor as a witness, to provide a summary of her testimony prior to trial, "or at a minimum, to clarify the oral representations made to appellant by the head bank corporation auditor ... that no formal audit report or physical inspection had been performed of the holding vault,...." Appellant's brief at 19.
 
 
 13
 First, we note there is no requirement that the government give a witness list to defense counsel before trial. United States v. Metropolitan Enters., 728 F.2d 444, 451 (10th Cir.1984); see Fed.R.Crim.P. 16(a)(1)(C), 16(a)(2). Second, if defendant claims that she requested specific evidence which the prosecutor did not provide, "a Brady violation is established upon a showing that the undisclosed evidence ' "might have affected the outcome of the trial." ' " Buchanan, 891 F.2d at 1441 (citations omitted). Defendant, however, has failed to show that the outcome of the trial would have been different if the government had provided written documentation that a formal audit was conducted and that nothing was in the vault. The damage defendant claims here is again one of credibility--she was unprepared to impeach the rebuttal witness whose testimony flatly contradicted that of defendant herself. We are not convinced that prior warning of the incriminating evidence would have " 'materially affected the verdict.' " See Buchanan, 891 F.2d at 1441 (citation omitted). Given the weight of the government's evidence and the paucity of the defense evidence, defendant's surprise at the rebuttal witness's testimony was not sufficient to tip the scales and deprive defendant of a fair trial.
 
 
 14
 "Claims of deprivation of due process rights require a specific showing of identifiable prejudice to the accused affecting his substantial rights." United States v. Comosona, 614 F.2d 695, 697 n. 3 (10th Cir.1980) (citing Chapman v. California, 386 U.S. 18 (1967); United States v. Radmall, 591 F.2d 548, 552 (10th Cir.1978) (Barrett, J., concurring)). Defendant has made no such showing. The judgment of the district court is AFFIRMED.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 Defendant moved to submit this case on the briefs. After examining the briefs and appellate record, the court determined that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case was therefore ordered submitted without oral argument
 
 
 [2]
 In her bill of particulars, defendant requested "the names and addresses of all persons known to the government who had knowledge of any matters relevant to the charges against the defendant, including matters which may be exculpatory." I R. tab 17 at 2. The order granting defendant's motion for discovery pursuant to Fed.R.Crim.P. 16 is equally general. It orders production of "[a]ny books, papers, documents, ... which are material to the preparation of the Defendant's defense...." Id. tab 23 at 2; and "[a]ll statements, books, papers, documents, tangible objects or portions of copies thereof ... to the extent that they relate to or in anyway pertain to the charges set forth in the indictment." Id. at 3
 
 
 [3]
 The district court found "there is no claim here that the government acted in bad faith, suppressed these documents, lost the documents or ... was even aware of the theory under which such documents would be used by the defendant to assist in the defendant's defense." II R.Supp. 37